IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY L. PETERS,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>            Defendant. | Civil No. 10-851(NLH)<br><br><br><br>OPINION |

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S WHITE HORSE PIKE
AUDUBON, NJ 08106

   *On behalf of Plaintiff*

ELLEN E. SOVERN
SPECIAL ASSISTANT U.S. ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278

   *On behalf of Defendant*

**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue

before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, March 8, 2006. For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits, claiming that as of March 8, 2006 her hepatitis C, lumbar spine pain, Raynaud's disease, and depressive disorder have left her completely disabled and unable to work.[1] Prior to that date, Plaintiff worked sporadically as a meat packer.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled. Plaintiff appealed the decision, and the Appeals Council denied review rendering the ALJ's decision final. Plaintiff now seeks this Court's review.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's

---

[1] Plaintiff also claims that other ailments, such as agoraphobia and panic disorder, render her disabled. The ALJ, however, only considered the above-listed impairments as "severe" under the regulations. Plaintiff does not challenge this assessment. As discussed below, the ALJ, however, considered her agoraphobia and panic disorder, as well as her ability to concentrate, along with the listed severe impairments in making his decision on Plaintiff's disability application.

2

application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  <u>Ogden

3

v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at

1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining

disability that require application of a five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is

available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's hepatitis C, lumbar spine pain, Raynaud's disease, and depressive disorder were severe (Step Two).  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing her previous job as a meat packer, Plaintiff had the residual functional capacity (RFC) to perform other jobs which are in significant numbers in the national economy (Step Five).

Plaintiff presents several arguments for review.  The dispositive issue to be decided on this appeal is whether the ALJ erred in determining Plaintiff's residual functional capacity and her capability of performing the duties of a surveillance

monitor.[2]

In making his decision that Plaintiff retained the RFC to perform the duties of a surveillance monitor, the ALJ first determined that Plaintiff was limited to sedentary work. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. In addition to these restrictions, the ALJ afforded Plaintiff additional restrictions: can only occasionally handle and finger using her hands, can only engage in simple repetitive tasks, can only occasionally interact with the general public, and can only occasionally deal with changes in the work setting. (R. at 13.)

The ALJ then reviewed Plaintiff's testimony and the medical evidence. He also considered the testimony of a vocational expert, who opined, based on the hypotheticals provided by the

---

[2] The ALJ also found that plaintiff was capable of performing the duties of a telephone quotation clerk. Plaintiff argues that the ALJ did not properly consider her agoraphobia in deciding that she retains the RFC to perform the duties of a telephone quotation clerk, because that job entails extensive interaction with the public over the telephone. The Court will not consider this argument, because the Court finds that the ALJ's determination that she can perform the alternative job of surveillance monitor is supported by substantial evidence.

ALJ, that someone with the outlined restrictions could perform the duties of a surveillance monitor. The ALJ ultimately found that even though Plaintiff was restricted to sedentary work with additional limitations, Plaintiff's claims regarding her complete inability to work were not supported by the medical evidence. He therefore found her not disabled.

In her appeal, Plaintiff primarily challenges the ALJ's failure to consider Plaintiff's inability to concentrate, which Plaintiff claims precludes her from being able to perform any job. Plaintiff points out that during the ALJ's questioning of the VE, the VE affirmed that if a claimant had difficulty sustaining concentration for a two hour increment of time, that person could not perform the duties of a surveillance monitor. Plaintiff further points out that her testimony and the medical evidence support her inability to concentrate. Based on this evidence, Plaintiff contends that the ALJ's finding that she can perform such a job is not supported by substantial evidence.

It is Plaintiff's burden to show she was unable to perform her past relevant job from at least March 8, 2006 through March 8, 2007, and thereafter. Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 1382c(a)(3)(A). Concomitantly, it is the Commissioner's burden to prove that there is some other kind of substantial gainful employment she is able to perform. Kangas, 823 F.2d at 777. Thus, with regard to the debate over

9

Plaintiff's ability to concentrate, Plaintiff must prove--through her testimony and medical evidence--that she has lacked that ability since March 2006. If Plaintiff does so, the ALJ must then explain why that evidence is not creditable in order to support his finding that Plaintiff is indeed capable of working.

In his decision, the ALJ noted several instances where Plaintiff had testified to her inability to concentrate from at least 2006. (R. at 13 ¶¶ 1, 3, 5 ("She has great difficulty concentrating and following instructions."; "She also said she stopped working in 2006 because she suffered from anxiety and experienced great difficulty concentrating."; "She can read the newspaper but she is not able to understand what she reads because she can not [sic] concentrate.").) This testimony was in combination with her testimony regarding her physical disabilities.

The ALJ also summarized Plaintiff's medical evidence, including a specific recitation of her psychiatric treatment. (R. at 14-15.) With regard to Plaintiff's concentration, the ALJ noted a state consultative examination performed on October 12, 2006 by Dr. P. Lawrence Seifer, who found Plaintiff to have "normal and logical" thought processes, "no evidence of hallucinations; impaired attention and concentration skills; and intact memory skills." (R. at 14.) Dr. Seifer diagnosed Plaintiff with "dysthymic disorder, panic disorder with

10

agoraphobia and polysubstance abuse in full remission," and concluded that Plaintiff "suffered from moderate mental limitations." (Id.)

A state review psychologist analyzed all available evidence on October 19, 2006, and found that Plaintiff "was not significantly limited in the mental activity categories of understanding and remembering simple directions, carrying out simple directions, her ability to sustain an ordinary routine, moderately limited in her ability to sustain concentration and persistence and interact with the public; and not significantly limited in the area of adaption." (Id.)

The ALJ then noted that Plaintiff had not sought any psychiatric care until 2008, and at that time--in April and May 2008--she received a Global Assessment of Functioning (GAF) of 65, which showed some mild symptoms of depression or insomnia, or some difficulty in social or occupational functioning, but was generally functioning pretty well, and had some meaningful interpersonal relationships. (R. at 15.) Another state consultative psychiatric examination performed by Dr. Robert J. Waters on August 8, 2008 noted that Plaintiff was not currently under psychiatric care, and observed that her affect was appropriate, she had a dysphoric mood, had clear sensorium, intact orientation to person, place and time, had impaired attention and concentration, and good insight and judgment.

11

(Id.)  Dr. Waters further noted that plaintiff "reported full independ[ence] for all aspects of personal care and grooming, the ability to cook and clean her home and that her younger son (age 13) assisted with the household chores.  She stated that she was able to use public transportation.  Her mother did the grocery shopping because she did not like crowds."  (Id.)  Dr. Waters concluded that Plaintiff's moderate and severe limitations were due to a combination of both her physical and mental status, and diagnosed her with dysthymic disorder, polysubstance dependence in full remission, and panic disorder with agoraphobia.  (Id.)

Upon consideration of this evidence, the ALJ concluded that Plaintiff's testimony "suggests that she is radically more limited than the medical records imply."  (Id.)  Regarding her psychiatric treatment specifically, the ALJ pointed out that despite repeated recommendations, Plaintiff did not seek psychiatric care until early 2008, and that the state agency's consultative reports show that before that time she only suffered from mild to moderate limitations.  The ALJ also noted that no treating physician reported that Plaintiff was unable to work.[3]  (Id.)

---

[3] This point is not necessarily dispositive, as it is the Commissioner, and not a claimant's treating doctors, who makes that determination.  See id. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  Nevertheless, it is relevant for the ALJ to note that no treating doctor of Plaintiff's restricted her ability to work.

12

This Court finds that substantial evidence supports the ALJ's determination that Plaintiff retained the ability to perform the job of surveillance monitor.  The evidence in the record, as detailed by the ALJ, clearly shows that Plaintiff suffers from numerous conditions, which the ALJ considered in making the RFC determination of Plaintiff's ability to perform sedentary work with additional restrictions (can only occasionally handle and finger using her hands, can only engage in simple repetitive tasks, can only occasionally interact with the general public, and can only occasionally deal with changes in the work setting).  Even with these restrictions, the VE testified that Plaintiff would be able to perform the job duties of a surveillance monitor.

What Plaintiff contests is that the ALJ did not make a specific finding as to Plaintiff's ability to concentrate. Moreover, Plaintiff argues that if the ALJ had made such a finding, the ALJ would have been compelled by the evidence in the record--Plaintiff's testimony and the medical records--to conclude that she lacked the ability to concentrate for more than two hours, and such a finding would preclude her ability to work at all.

Plaintiff's argument is unavailing for two reasons.  First, even though the ALJ did not make a specific restriction as to the amount of time Plaintiff was able to concentrate, he recognized

13

that Plaintiff was impaired in this area. He noted her testimony as to her lack of concentration, as well as the doctors' observations regarding her impaired concentration. Based on this impairment, the ALJ issued two restrictions that encompassed the concentration problem--the need for simple repetitive tasks and only occasional changes in the work setting. Thus, it cannot be said that the ALJ did not consider Plaintiff's problems with concentration.

Second, Plaintiff has not provided sufficient evidence to demonstrate that she suffered from the inability to concentrate for no more than two hours since March 2006. No treating physician made such a finding (and could not have until 2008, when Plaintiff first sought mental health treatment), and no state consultative physician made that observation. It is undisputed that the evidence shows that Plaintiff has impaired concentration, but such a general finding by the doctors, and general statements by Plaintiff herself, cannot serve as a basis to support a specific time limit on her ability to concentrate. Indeed, if the ALJ had made such a determination--e.g., Plaintiff can concentrate for three hours at a time--it could be argued that such a finding could not be supported by the evidence.

The ALJ fully considered all of Plaintiff's impairments and credited that Plaintiff suffers significant effects from all of them in combination. The job of surveillance monitor satisfies

all of these restrictions--the job is sedentary, unskilled, and can be performed one-handed, and it requires simple skills, few changes, and only limited interaction with the public.[4] (R. at 40-42.) The evidence in the record supports this finding, and Plaintiff has failed to show other evidence, aside from her own testimony, which contradicts or undermines the ALJ's conclusion. See 20 C.F.R. § 404.1529(c); Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p (explaining that the Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony). Simply disagreeing with the ALJ's assessment of her credibility is not sufficient to establish that his decision was not supported by substantial evidence. Perkins v. Barnhart, 79 Fed. Appx. 512, 515 (3d Cir. 2003).[5]

---

[4] Although it does not appear that Plaintiff has argued that her agoraphobia singularly renders her disabled, she does argue that her inability to interact with people, in combination with her inability to concentrate, precludes her from performing the duties of a surveillance monitor. The medical evidence, however, does not support this argument, because even though she is diagnosed with agoraphobia, no doctor has indicated that she has a complete inability to go into public, and Plaintiff's testimony also does not support such a conclusion.

[5] The ALJ's findings were also in compliance with SSR 96-7p, which provides, "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the

**III. Conclusion**

Consequently, for the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is supported by substantial evidence. Accordingly, the decision of the ALJ is affirmed. An accompanying Order will be issued.


Date: January 10, 2011                    s/ Noel L. Hillman
                                         NOEL L. HILLMAN, U.S.D.J.

---

individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."

16